# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

LOREY D. SHAMLEE,

           Plaintiff,

v.                                         ACTION NO. 2:09-cv-290

MICHAEL J. ASTRUE,
Commissioner of Social Security,

           Defendant.

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff brought this action under 42 U.S.C. § 405(g)[1] and 42 U.S.C. §1383(c)(3) seeking

judicial review of the decision of the Commissioner of Social Security ("Commissioner") denying

plaintiff's claim for a period of disability, and disability insurance benefits ("DIB") pursuant to

sections 416(i) and 423(d) respectively, of the Social Security Act (the "Act"); and Supplemental

Security Income ("SSI") pursuant to section 1381 of the Act. 42 U.S.C.A. §§ 401- 434, 1381

(2010).[2]

---

[1] The Court notes that with the recent passage of the Patient Protection and Affordable Care Act, provisions of 42 U.S.C. 405 have been amended. These changes notwithstanding, the substantive provisions regarding judicial review remain unchanged. Pub. L. No. 111-148, 124 Stat. 119 (2010).

[2] As the defendant, Commissioner, rightly points out, the record reflects that the plaintiff applied for a period of disability, DIB, and SSI. [R. 40, 299, 301-04.] The ALJ's decision, however, only addresses the claims presented by the plaintiff regarding the period of disability and DIB. Despite this oversight the Court notes that the disability determination analysis for DIB and SSI is the same. *Compare* 42 U.S.C.A §§ 423(d)(1)(A) and 416(i)(1)(A) (2010), *with* 42 U.S.C.A. 1382c(3)(a) (2010).

This action was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C) and Rule 72(b) of the Federal Rules of Civil Procedure, as well as Rule 72 of the Rules of the United States District Court for the Eastern District of Virginia, by an order of reference entered September 11, 2009. This Court recommends that the decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL BACKGROUND

Plaintiff, Lorey D. Shamlee ("Shamlee"), filed an application with the Social Security Administration to establish a period of disability, DIB, and an award of SSI on April 21, 2006. [R. 18.][3] In her claim, Shamlee alleged an onset of disability beginning January 14, 2003. Among the ailments she suffers from, or has been treated for, include: chronic urticarial vasculitis, chronic anemia, chronic diarrhea, hypertension, pre-menopausal symptoms, muscle cramps, fever, chest pressure, eczema, neck pain, hiatal hernia, allergic rhinitis, knee pain, abdominal pain, tremors and open angle glaucoma. (Pl.'s Br. Mot. for Summ. J. at 3.) [Doc. No. 16.] Her application was initially denied on August 28, 2006, and upon reconsideration, denied again on November 20, 2006. A hearing was held before Administrative Law Judge ("ALJ") O. Price Dodson on May 7, 2007 in Norfolk, Virginia. On July 25, 2007, Judge Dodson issued a decision and order denying benefits to Shamlee. [R. 25.] On April 8, 2009, upon the denial of Shamlee's request for review by the Appeals Council (in the Office of Disability Adjudication & Review of the Social Security Administration) the ALJ's decision became the defendant's (Commissioner's) final decision. Having exhausted all administrative remedies, Shamlee filed this action for judicial review, in accordance with 42 U.S.C. § 405(g), on June 24, 2009. (Comp.) [Doc. No. 3.]

---

[3] Page citations are to the administrative record previously filed by the Commissioner.

On September 15, 2009, the Court issued an order directing the plaintiff and the defendant, if he wished, to file cross motions for summary judgment. [Doc. No. 11.] In her Motion for Summary Judgment, Shamlee specifically challenges the ALJ's decision and seeks reversal because the ALJ, or Appeals Council, erred:

> (i) by summarily concluding that Ms. Shamlee can return to her past relevant work without providing specific findings or analysis regarding the physical and mental demands of this work, as required by SSR 82-62.
>
> (ii) in that the ALJ's RFC finding failed to comply with SSR 96-8p thus he erred in finding that Ms. Shamlee could return to her past relevant work.
>
> (iii) in failing to comply with 20 C.F.R. § 404.1527 by failing to accord adequate weight to the opinion of the claimant's treating physician.
>
> (iv) as a matter of law in evaluating Ms. Shamlee's subjective complaints in failing to apply the regulatory factors set forth in SSR 96-7p and 20 C.F.R. § 404.1529 and making a conclusory credibility finding in violation of SSR 96-7p.
>
> (v) in failing to grant the Request for Review despite the fact that new and material evidence was submitted with the Request for Review.
>
> (vi) by violating SSR 00-4p and his duty to fully develop the record by failing to resolve with a full explanation conflicts between the vocational expert's testimony and the DOT.

(Pl.'s Br. Mot. Summ. J. at 1-2.)

## II. FACTUAL BACKGROUND

Shamlee was born on February 21, 1956, making her 51 years of age at the time of the ALJ's decision (Pl.'s Br. Mot. Summ. J. at 3.) At that age, Shamlee is classified by the Code of Federal Regulations as a "[p]erson closely approaching advanced age," which, in combination with other

factors, may seriously impact one's ability to adjust to other work. 20 C.F.R. § 416.963(d) (2010). Shamlee stated in the hearing before ALJ Dodson that she holds an associate's degree in accounting, and her past relevant work included positions as an insurance representative for Amerigroup verifying insurance for children receiving Medicaid, a customer service position with Tricare, a sales position with QVC, a collections representative for Household Credit, and an unspecified position with One Nation Insurance Company. [R. 332-35.]

Shamlee described the medical problems that gave rise to her request for benefits as stemming primarily from chronic diarrhea, bone pain as a result of vasculitis, as well as bouts of depression. [R. 338, 340.] For these impairments, and others, Shamlee was treated by Chesapeake Medical Associates, the Hampton Health Department, Tidewater Eye Centers, Dr. Christopher Wise, M.D., of the Medical College of Virginia's Rheumatology Department, and Nephrology Associates of Tidewater. (Pl.'s Br. Mot. Summ. J. at 3-4.)

The Commissioner disputes three aspects of Shamlee's recitation of the facts. First, the Commissioner disputes Shamlee's claims that she suffered "for a number of years from chronic urticarial vasculitis, chronic anemia, chronic diarrhea, and poorly controlled hypertension" (Def.'s Br. Mot. Summ. J. at 7) [Doc. No. 18.] Furthermore, the Commissioner believes that Shamlee overstates the significance of evidence dating prior to October 25, 2005, the date at which she was previously denied benefits by an ALJ in a prior claim. Finally, the Commissioner disputes Shamlee's summary of vocational expert Robert Edwards' testimony, as he believes Shamlee's synopsis fails to include Mr. Edwards' response that was accepted by the ALJ. (Def.'s Br. Mot. Summ. J. at 7-8.)

Despite Shamlee's claims of an inability to work, ALJ Dodson, in a written decision dated

July 25, 2007, issued an unfavorable ruling concluding that Shamlee was not disabled under sections 416(i) and 423(d)[4] of the Act to qualify for DIB. Correspondingly, although not expressed in the ALJ's decision, Shamlee was not determined to be disabled under section 1382(a) of the Act to qualify for SSI. [R. 25.] In light of Shamlee's residual functional capacity ("RFC"), and the physical and mental demands of her past relevant work, ALJ Dodson found that Shamlee was not under a disability as defined by the Act. [R. 25.]

### III. <u>STANDARD OF REVIEW</u>

In reviewing a decision of the Commissioner denying benefits, the Court is limited to determining whether the Commissioner's decision was supported by *substantial evidence* on the record, and whether the *proper legal standard* was applied in evaluating the evidence. 42 U.S.C.A. § 405(g) (2010) (emphasis added); *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (*citing Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

Substantial evidence is "such relevant evidence as 'a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consol. Edison Co. of N. Y. v. NLRB*, 305 U.S. 197, 229 (1938)). It consists of "more than a mere scintilla" of evidence, but may be somewhat less than a preponderance. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). In reviewing for substantial evidence, the Court does not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig*, 76 F.3d at 589; *Hays*, 907 F.2d at 1456. "Where conflicting evidence

---

[4] All citations to the "Act" in this R&R are to the codified version of the United States Code, or the United States Code Annotated. In the record, the ALJ refers to these sections according to their administrative codification.

allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Commissioner (or the [Commissioner's] designate, the ALJ)." *Craig*, 76 F.3d at 589. The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed, *Perales*, 402 U.S. at 390, unless the decision was reached by means of an improper standard or misapplication of the law. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) (*citing Myers v. Califano*, 611 F.2d 980, 982 (4th Cir. 1980)).

Thus, reversing the denial of benefits is appropriate only if either (A) the ALJ's determination is not supported by substantial evidence on the record, or (B) the ALJ made an error of law. *Coffman,* 829 F.2d at 517.

## IV. ANALYSIS

### A. Determining Disability and Sequential Analysis

To meet the eligibility requirements for DIB under section 423 of the Social Security Act, an individual must meet the insured status requirements of the section, be under age sixty-five, file an application for DIB and a period of disability, and be under a "disability" as defined in the Act. 42 U.S.C.A. § 423(a) (2010). To qualify for SSI under section 1382 of the Act, a person under age sixty-five must be disabled and meet income requirements. 42 U.S.C.A. § 1382(a) (2010). Common to both lists of eligibility requirements is the necessity for a determination of disability. The Social Security Regulations define "disability" for the purpose of obtaining DIB and SSI, under Titles II and Title XVI of the Act, as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 20 C.F.R. § 404.1505(a) (2010); 20 C.F.R. § 416.905(a) (2010); *see also* 42 U.S.C.A §§ 423(d)(1)(A),

6

416(i)(1)(A), 1382c(3)(a) (2010). To meet this definition, the claimant must have a "severe impairment" which makes it impossible to do previous work or any other substantial gainful activity that exists in the national economy.

In evaluating claims for DIB and SSI, the regulations promulgated by the Social Security Administration provide that all material facts will be considered to determine whether a claimant has a disability. The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled. The ALJ must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment that equals a condition contained within the Social Security Administration's official listing of impairments, (4) has an impairment that prevents past relevant work, and (5) has an impairment that prevents her from any substantial gainful employment. An affirmative answer to question one, or negative answers to questions two or four, result in a determination of no disability. Affirmative answers to questions three or five establish disability. 20 C.F.R. § 404.1520(a) (2010); 20 C.F.R. § 416.920(a) (2010).

## B.    ALJ's Findings

In this case, ALJ Dodson found the following regarding Shamlee's condition. First, Shamlee had not engaged in substantial gainful activity since January 14, 2003. This determination was not supported in the ALJ's decision. [R.21.][5]

Second, Shamlee suffered the following severe impairments: recurrent vasculitis and anemia. [R. 21.] The recurrent vasculitis finding was based on the medical evidence which revealed a

---

[5]Although the ALJ's support for the finding that Shamlee did not engage in substantial gainful activity did not reference the administrative record and was rather terse, since it favors Shamlee, and was not objected to by her in her briefs, the Court recommends accepting the ALJ's brief rationale.

7

history of vasculitis manifested by skin and joint lesions without other organ invovlement. The anemia impairment finding was supported by treatment evidence showing a history of fatigue and loose stool without blood. [R. 21.] ALJ Dodson found Shamlee's other impairments, such as diarrhea and depression, were non-severe because they did not have more than a minimal effect on her ability to do basic work related functions. [R. 21.]

Third, Shamlee did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. 24.] Shamlee's anemia impairment did not require blood transfusions every two months, as required by the regulation, nor was there evidence to support vasculitis with involvement of a single organ or body system. [R.22.] In considering her impairments, ALJ Dodson found that Shamlee had the RFC to perform the full range of sedentary work.[6] Specifically, ALJ Dodson determined that Shamlee could lift and carry 10 pounds, sit for 6 hours during an 8-hour work day, stand and walk for 2 hours during an 8-hour work day, and occasionally perform postural activities requiring the ability to climb, balance, stoop, kneel, crouch, and crawl. [R. 22]. To support this finding, ALJ Dodson considered Shamlee's symptoms in light of the objective medical evidence, the intensity, persistence, and limiting effects of these symptoms, as well as Shamlee's credibility in conveying the severity of these symptoms. In part, ALJ Dodson found that Shamlee's statements regarding the intensity, persistence, and limiting effects of the symptoms were not entirely credible. [R. 23.] For instance, ALJ Dodson cited the October 14, 2003, office notes of Dr. Arlene B. Palting, M.D., noting

---

[6] The regulation classifies work into five different categories based on exertion. The preface describes the process, "[t]o determine the physical exertion requirements of work in the national economy, we classify jobs as sedentary, light, medium, heavy, and very heavy. These terms have the same meaning as they have in the Dictionary of Occupational Titles, published by the Department of Labor." 20 C.F.R. § 416.967 (2010).

that Shamlee denied any joint pain. Similarly, the ALJ cited office notes from Dr. Timothy Curley, M.D., in December 2004 indicating that Shamlee's vasculitis appeared under control. Furthermore, ALJ Dodson referred to a consultative evaluation by Dr. Parimal Soni, M.D., which revealed that: Shamlee's intermittent pain was partially relieved by pain medication; her symptoms seemed to be under control with steroid therapy, she lacked joint abnormality, presence of heat, redness, swelling, or change in range of motion; and she was able to squat, her gait was normal, and there was no atrophy in any muscle group. Finally, ALJ Dodson referenced a June 2006 visit when Shamlee was seen by the Hampton Health Department. In that follow-up visit for vasculitis she noted some improvement with knee pain, with loose joint sensation, as well as bone pain and stiffness. In light of this evidence, ALJ Dodson found Dr. Wise's assessment regarding Shamlee's limitations inapposite with the remaining objective evidence and thus afforded his opinion minimal weight. In conclusion, ALJ Dodson found the objective medical evidence failed to support limitations that would preclude all work activity and instead favored the sedentary work assessment. [R. 24-25].

Fourth, with the RFC to perform the full range of sedentary work, ALJ Dodson concluded that Shamlee was capable of performing her past relevant work as an insurance claims clerk, customer service clerk, telephone order clerk, and collections clerk. This work, classified as skilled or semi-skilled, but requiring only sedentary exertion, was not precluded by Shamlee's RFC. As a result, Shamlee was not determined to be under a disability from January 14, 2003, through July 25, 2007, and therefore she was ineligible for DIB or SSI. [R. 25.]

## C.    Alleged Errors

To recall, the standard of review in Social Security appeals mandates that this Court not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). As a result, in order to prevail, Shamlee must overcome a hefty burden to prove ALJ Dodson's decision is not supported by substantial evidence. As the *Laws* court illuminated, substantial evidence is that which consists of "more than a mere scintilla" of evidence, but may be somewhat less than a preponderance. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). Alternatively, Shamlee may argue that the ALJ's decision was based on an error of law or a misapplied standard. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) (*citing Myers v. Califano*, 611 F.2d 980, 982 (4th Cir. 1980)). In sum, Shamlee must prove that there is a mere scintilla, or less, of evidence to support ALJ Dodson's decision denying benefits, or that ALJ Dodson made an error of law.

In her brief, Shamlee alleges the ALJ, or Appeals Council, erred in: (i) summarily concluding that she could return to her past relevant work without providing specific findings or analysis regarding the physical and mental demands of this work, as required by SSR 82-62; (ii) his RFC finding because it failed to comply with SSR 96-8p; (iii) failing to comply with 20 C.F.R. § 404.1527 because he did not accord adequate weight to the opinion of the claimant's treating physician; (iv) evaluating Shamlee's subjective complaints by failing to apply the regulatory factors set forth in SSR 96-7p and 20 C.F.R. § 404.1529, and making a conclusory credibility finding in

violation of SSR 96-7p; (v) failing to grant the Request for Review despite the fact that new and material evidence was submitted with the Request for Review; and (vi) violating SSR 00-4p and his duty to fully develop the record by failing to resolve, with a full explanation, conflicts between the vocational expert's testimony and the DOT. The Court will take each in turn.

*Claim (i)*

Shamlee's first claim concerns the ALJ's alleged error in concluding that she could return to her past relevant work without providing a specific analysis regarding the demands of this work. (Pl.'s Br. Mot. Summ. J. at 9.) In particular, Shamlee argues that ALJ Dodson did not follow the provisions of SSR 82-62, which highlight the importance of "secur[ing] evidence that resolves the issue as clearly and explicitly as circumstances permit." Soc. Sec. Reg. 82-62.

It is important to recognize that "the claimant first must bear the burden at . . . step four that the impairment prevents him from performing his past work." *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). Absent a persuasive showing from the claimant that she is incapable of performing her past relevant work the analysis ends and the claimant is not entitled to relief. In fact, "[t]he claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level, exertional demands and nonexertional demands of such work." Soc. Sec. Reg. 82-62. In addition to the claimant's statements regarding her past relevant work, the ALJ may refer to "medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and in some cases, supplementary or corroborative information from other sources such as employers, [or] the Dictionary of Occupational Titles etc., on the requirements of the work as generally performed in the economy." *Id.*

11

In this case, although ALJ Dodson's rationale for determining that Shamlee could meet the demands of her previous relevant work is not precisely developed, there is substantial evidence in the record to support this finding. For example, Shamlee herself described the exertional demands of her previous work as requiring only 1 hour of walking per day, 1 hour of standing per day, and 6 hours of sitting in a work-day. [R. 95.] These demands would fit within the CFR definition of sedentary work. *See* 20 C.F.R. § 404.1567 (2010). Moreover, the vocational expert, Robert Edwards, described Shamlee's previous work as semi-skillled to skilled, *sedentary,* work. [R. 343.] Thus, in addition to Shamlee's own statements about her previous work, which SSR 82-62 states is the primary source for determing the exertional demands of past relevant work, ALJ Dodson relied on "supplementary, corroborative information" from an additional source, the vocational expert. This is exactly the type of evidence that SSR 82-62 calls for, and therefore qualifies as more than a mere scintilla of evidence upon which a finding of substantial evidence can be sustained. *See Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). As such, since the ALJ relied on substantial evidence, in Shamlee's testimony and in the record, the Court recommends Shamlee's claim (i) be DENIED.

*Claim (ii)*

Shamlee's second claim states that by failing to properly determine her RFC as required by SSR 96-8p the ALJ's decision was not supported by substantial evidence. Specifically, Shamlee argues that ALJ Dodson summarily concluded that she could perform sedentary work without conducting a complete function-by-function assessment based on all relevant evidence. (Pl.'s Br. Mot. Summ. J. at 12.)

SSR 96-8p requires that "[t]he RFC assessment must first identify the individual's functional

12

limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945." Soc. Sec. Reg. 96-8. Once the assessment is completed, only then can the RFC be classified in exertional demand levels as sedentary, light, medium, heavy, or very heavy work. *Id.* The associated paragraphs (b), (c), and (d) of 20 CFR §§ 404.1545, 416.945 address physical abilities, mental abilities, and other abilities, respectively, affected by impairments.

For example, with respect to physical abilities, applicable to this case, the regulation derivatively referred to by Shamlee states:

> When we assess your physical abilities, we first assess the *nature and extent of your physical limitations* and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to perform certain physical demands of work activity, such as *sitting, standing, walking, lifting, carrying, pushing, pulling,* or other physical functions (including *manipulative* or *postural* functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work.

20 CFR §§ 404.1545, 416.945 (2010) (emphasis added). Thus, it is incumbent upon an ALJ to reference a claimant's specific physical limitations in order to determine her residual functional capacity.

In this case, the ALJ did exactly that. For example, ALJ Dodson set out the proper standard of review when he stated in his decision, "[i]n considering the claimant's symptoms, I must follow a two step process in which it must first be determined whether there is an underlying medically determinable *physical or mental impairment*," and "once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, I must evaluate the intensity persistence, and *limiting effects* . . . ." [R. 22.]

(emphasis added).

First, ALJ Dodson considered Shamlee's symptoms, including bone pain, diarrhea, and lower back, leg, and overall body pain. [R. 23.] Then, ALJ Dodson stated that he found Shamlee's medically determinable impairments could produce the alleged symptoms, but then cautiously reviewed the intensity, persistence and limiting effects of the symptoms. [R. 23]. In assessing Shamlee's RFC ALJ Dodson noted that Shamlee denied any joint pain in one doctor's visit; her intermittent pain was partially relieved by pain medication; her symptoms seemed to be under control with steroid therapy, she lacked joint abnormality, presence of heat, redness, swelling, or change in range of motion; she was able to squat and her gait was normal; there was no atrophy in any muscle group; and she noted some improvement with knee pain with loose joint sensation as well as bone pain and stiffness. [R. 23-24.] With these assessments in mind ALJ Dodson specifically found that Shamlee could "lift and carry 10 pounds, sit for 6 hours during an 8-hour workday and stand and walk for 2 hours during an 8-hour workday." [R. 22]. Moreover, he concluded she could "perform postural activities requiring the ability to climb, balance, stoop, kneel, crouch and crawl." [R. 22.]. In so making these findings, ALJ Dodson determined that Shamlee was capable of returning to her past relevant work in a sedentary occupation.

In sum, the ALJ did consider the nature and extent of Shamlee's limitations on her overall RFC. In particular, he considered the evidence of her joint pain, swelling, gait, muscle atrophy, ability to climb, balance, stoop, kneel and accomplish other vocational tasks. Thus, because ALJ Dodson did in fact comply with SSR 96-8p in reaching his decision regarding Shamlee's RFC, the Court recommends Shamlee's claim (ii) be DENIED.

*Claim (iii)*

Shamlee's third claim states that ALJ Dodson failed to accord adequate weight to the opinion of her treating physician, Dr. Christopher Wise, M.D., Shamlee claims that the ALJ was obliged to accord Dr. Wise's findings controlling weight if they were well supported and not inconsistent with the other evidence in the record. (Pl.'s Br. Mot. Summ. J. at 15.)

While it is true the courts of this Circuit have generally accorded greater weight to the testimony of a treating physician, the rule does not absolutely require that the testimony be given *controlling weight*. Instead, a treating physician's opinion on the nature and severity of the claimed impairment is entitled to controlling weight *if* it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other *substantial evidence* in the record. *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). Similarly,"[t]he ALJ must generally give more weight to the opinion of a treating physician because that physician is often most able to provide 'a detailed, longitudinal picture' of a claimant's alleged disability. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2008). However, 'circuit precedent does not *require* that a treating physician's testimony be given controlling weight.'"*Thompson v. Astrue*, 2008 WL 4273840, at *11 (W.D.Va. Sep. 17, 2008) (emphasis added) (*quoting Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996)). Thus, the rule is rather straightforward, *if* the treating physician's opinion is not inconsistent with other substantial evidence, and *if* it is well supported by other evidence, then it does warrant controlling weight.

In this case, nevertheless, ALJ Dodson afforded minimal weight to Dr. Wise's opinion. The rationale for the ALJ affording minimal weight to the medical opinion is conclusory and poorly reasoned, but it is supported by substantial evidence. ALJ Dodson's reasoning is conclusory

because he simply states, "I am no [sic] bound to accept even a treating physician's conclusion when it is not well supported by detailed, clinical and/or diagnostic evidence . . . Clearly, the overall evidence fails to support limitations of the severity set forth by Dr. Wise." [R. 24.] Although, ALJ Dodson uses the "magic words," that is, that he need not accept a treating physician's opinion if it is not well supported, he inadequately explains how Dr. Wise's opinion is not supported by clinical, medical, or diagnostic evidence, or how it is inconsistent with other substantial evidence. The manner in which ALJ Dodson conveniently deduced, "clearly $x$, because $y$" is the epitome of a conclusory statement. To be sure, however, ALJ Dodson cites the analyses of Drs. Palting, Curley, and Soni, [R. 23-24] yet he fails to address the diagnoses of several other physicians in the record. This step is the critical missing link in his decision to accord Dr. Wise's opinion less weight.

Even so, the Court, in its examination of the record, found additional instances which contradict Dr. Wise's opinion regarding Shamlee's limitations. Shamlee's alleged limitations stem from either of two types of ailments: physical, including visual, and psychological. With respect to the allegations of physical limitation, the Court takes note of the following in the record. Dr. Gregory McCormack, M.D., on August 17, 2006 noted that Shamlee was cabable of occasionally lifting 20 pounds, frequently lifting 10 pounds, standing 2 hours per work-day, sitting about 6 hours per workday, and was unlimited in her ability to push and/or pull. [R. 248.] Dr. Raymond Flores, M.D., noted in a rheumatology evaluation on October 26, 2006 that Shamlee did not allege a worsening of her condition, nor did she raise new allegations. [R. 276.] Further, Shamlee's ocular problems were diagnosed as "non-severe" by Dr. Jacob Wortz, M.D., on July 26, 2007, and Dr. Julian Goldberg, M.D., on that same day. [R. 206, 207.] Similarly, Dr. Richard Carlson, M.D., noted that Shamlee's "visual status would not cause her to meet the requirements of the disability manual."

[R. 204.]

As far as Shamlee's psychological health, Dr. Maryanne Bongiovani, Ph.D., noted on August 17, 2006 that Shamlee's psychological disorders were non-severe [R. 233]; and she had no restriction on activities of daily living, no difficulties in maintaining social functioning, no episodes of decompensation, and only mild difficulties in maintaining concentration [R. 243]. In an affirmance of Dr. Bongiovani's analysis, Dr. Chang-Wuk Kang, M.D., stated that Shamlee did not claim any new mental impairments or worsening of those previously noted. [R.278]. Finally, Dr. Ace Tubbs, Jr., Ph.D., noted that Shamlee "should be able to cope at a fair level with competitive work stress due to a depressed reaction to stress" and "[s]he seemed capable of performing appropriately on tasks." [R. 210.]

Only after a review of the opinions of these medical professionals was it appropriate for ALJ Dodson to conclude that Dr. Wise's opinion should be afforded minimal weight. Although Dr. Wise was the treating physician, normally accorded controlling weight with respect to his opinions regarding disability, in this case there was substantial, inconsistent, evidence which supported a finding contradictory to his opinion. For that reason, there was substantial evidence to support ALJ Dodson's decision. As such, in keeping with the settled case-law in this circuit, the Court recommends Shamlee's claim (iii) be DENIED.

*Claim (iv)*

Shamlee's fourth claim states that ALJ Dodson erred in: evaluating Shamlee's subjective complaints and failing to apply the regulatory factors set forth in SSR 96-7p and 20 C.F.R. § 404.1529; and making a conclusory credibility finding. (Pl.'s Br. Mot. Summ. J. at 17.)

The law regarding the determination of credibility decisions is well established. "In

17

reviewing for substantial evidence, [a court] do[es] not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir.1990)); *see also Johnson v. Barnhart*, 434 F.3d 650, 657 (4th Cir. 2005). Moreover, the Code of Federal Regulations makes clear the requirement that "statements about [a claimant's] pain or other symptoms will not alone establish that [a claimant is] disabled; there must be medical signs and laboratory findings which show that [the claimant has] a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 404.1529(a) (2010). Thus, given the deferential fact-finding posture a court is to take, absent substantial, objective, medical evidence supporting a claimant's allegations regarding pain, a court is to defer to the decision of the Commissioner.

Here, the Court agrees with Shamlee's assertion that ALJ Dodson's decision was conclusory. In fact, unlike ALJ Dodson's rationale for according Dr. Wise's opinion minimal weight, in which the ALJ at least referenced three physicians' opinions, with respect to this claim the ALJ makes no specific reference to the record at all. ALJ Dodson, simply states, "[a]fter considering the evidence of record , I find . . . the claimant's statements . . . are not entirely credible." [R. 23.] Still, even though ALJ Dodson's analysis was cursory and conclusory, the fact remains, substantial evidence supports his decision.

To start, as the Commissioner correctly points out, Shamlee's complaints were undermined by the relatively benign medical evidence. (Def.'s Br. Mot. Summ. J. at 10.) In addition to the evidence cited in claim (iii), with respect to the extent of her limitations, clinical findings showed that Shamlee did not have joint swelling, inflammation, or deformity [R. 214] and her spine had

18

normal curvature with no tenderness [R. 214].

Furthermore, Shamlee's complaints of pain were not corroborated by the record; or, as the Commissioner states, her "complaints were undermined by her own conflicting statements." (Def.'s Br. Mot. Summ. J. at 10.) For example, while Shamlee testified at the ALJ's hearing that she suffered diarrhea 13-15 times a day, she stated that she suffered it off and on, or on one occasion, six times in a day. [R. 184, 292.] Likewise, her testimony regarding her lifestyle changes, in particular the limit to her daily activities, was compromised by the fact she stated she read everyday, went to church, talked on the phone, cooked, did laundry, and went to the grocery store. [R. 100, 102, 104.]

Similarly, Shamlee even remarked in an April 13, 2007 report that there had not been any change in her illnesses, injuries, or conditions, since she last completed a disability report [R. 122] nor did she "have any new physical or mental limitations as a result of [her] illnesses, injuries, or conditions since [she] first completed a disability report." [R. 122]. These are quite contradictory statements in light of the seriousness of her condition expressed during her testimony.

Given these cited examples of evidence in the record undermining at least some of Shamlee's claims of intensity and persitence of pain, the Court is satisfied that there is more than a "mere scintilla" of evidence in the record supporting the ALJ's decision. *See Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). As such, the Court recommends Shamlee's claim (iv) be DENIED.

*Claim (v)*

Shamlee's fifth claim alleges that the Appeals Council erred in failing to grant her Request for Review despite the submission of new and material evidence. (Pl.'s Br. Mot. Summ. J. at 21.)

"With regard to Appeals Council review of newly submitted evidence, the Appeals Council

will consider new evidence if it is new, material, and relates to the period on or before the date of the ALJ's decision. 20 C.F.R. § 416.1470. Evidence is 'new' if it is not duplicative or cumulative, and is material 'if there is a reasonable possibility that the new evidence would have changed the outcome.' If the Appeals Council denies review, the ALJ's decision automatically becomes the final decision of the Commission. 20 C.F.R. § 404.981." *Stotler v. Astrue*, 2010 WL 376620, at *3 (W.D.Va., Jan. 27, 2010) (*citing Wilkins v. Sec'y, Dep't Health and Human Svcs.*, 953 F.2d 93, 96 (4th Cir. 1991)). To further clarify the definition, "new" means evidence not in existence, nor available, at the time of the ALJ's hearing. *See Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997). Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome. *Wilkins*, 953 F.2d at 95-96.

In this case, the controverted evidence is additional pages of lab reports and a six-question questionnaire Shamlee submitted to Dr. Wise, which included the questions:

> (1) was there medical evidence by history or otherwise of severe diarrhea? (2) was there medical evidence by history or otherwise of severe depression? (3) what were the effects of her anemia by history or otherwise? (4) what was the basis for the opinions stated in the physical capacities assessment dated April 23, 2007? (5) Did her condition meet the criteria of the highlighted regulation attached? (6) if so, what medical evidence established this?

[R. 314.] Dr. Wise responded to these questions with hand-written notes on the same page that was faxed to him. Among his responses were the answers, "yes, by history," "see records -severe anemia (Hb 7.6 on 12/19/06)," and "Diagnosis of vasculitis see records from Dr. Lee prior to 2004." [R. 314.]

The Court has serious misgivings regarding the "newness" of Dr. Wise's response. How can it be argued that the information was new when it was clearly available at the time of ALJ Dodson's

hearing? Questions (1) through (3), for example, invited a response based on historical information that was included in the record.[7] Indeed, Dr. Wise responded by simply referencing the record. By no means can this qualify as new, previously non-existent evidence, since all of the answers to the questionnaire referenced information in the record. Furthermore, as the Commissioner aptly notes with respect to question (4), Dr. Wise already knew that the basis for his assessment on April 23, 2007 was anemia. (Def.'s Br. Mot. Summ. J. at 16.) Lastly, in regards to questions (5) and (6), Dr. Wise again simply referenced the record and failed to indicate how this was not existent or available at the time of ALJ Dodson's decision. [314.] As the case law dictates, if the evidence is not new and material, the Appeals Council is not obliged to review the claimant's record. In such instances the ALJ's decision appropriately becomes the final decision of the Commissioner.

Furthermore, Shamlee fails to explain how the additional pages of medical evidence are new and material, and not cumulative or duplicative. The additional evidence includes 13 pages of what appear to be lab results and technical medical reports. Clearly, the Court is not in the business of reviewing medical records and, thus, has little understanding of the import of the reports. That onus, however, is upon Shamlee and here, as ALJ Dodson had before, she fails to make little more than a conclusory argument that the additional pages are new and material. Shamlee states the evidence is new because "it addresses the basis for Dr. Wise's opinions in his April 23, 2007 assessment . . . ," and the evidence is material because it "clarifies the basis for the only residual functional capacity

---

[7] The fact that the "new" evidence must have been for the period prior to the ALJ's decision is not lost on the court. However, the phrasing of the questionnaire solicited answers that were unlikely to produce new admissible evidence.

evaluation of record." [R. 314.] Without addressing the merits of these statements,[8] the Court is faced with the abiding question, how? How does addressing the basis of Dr. Wise's opinion make the opinion new? Even if new, was not that information available at the time of the ALJ's opinion? Correspondingly, how does clarifying the basis for the RFC evaluation make it material. As mentioned above, simply using the right words and stating "$x$ because $y$" does not make a compelling argument, particularly for the party seeking to reverse the status quo as Shamlee is here. *See* 42 U.S.C.A. 405(g) (2010) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").

Finally, with respect to the materiality of the additional evidence, in this case the Appeals Council did consider the "new" evidence, *see supra* note 8, as required by 20 C.F.R. § 404.970, and still declined review. Therefore, the evidence could not have been material if it did not prompt a review of her case or a remand. Thus, the Council abided by its regulatory requirement and did not make an error of law. As a result, since Shamlee failed to show that the additional evidence was new and material, the Court recommends that her claim (v) be DENIED.

*Claim (vi)*

Shamlee's final claim states that ALJ Dodson erred in failing to develop the record by failing to resolve conflicts, with a full explanation, between the vocational expert's testimony and the Dictionary of Occupational Titles ("DOT"). (Pl.'s Br. Mot. Summ. J. at 23.)

As Shamlee correctly points out, SSR 00-4p requires an ALJ to inquire fully "[w]hen there

---

[8] The factual accuracy of Shamlee's statement is in doubt, especially considering the Appeals Council included in its letter to Shamlee a statement indicating that it "considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council." [R. 6.] On page 9 of the record "Exhibit 1" is listed as the letter George C. Piemonte faxed to Dr. Wise. [R. 9.]

is an *apparent unresolved* conflict between VE or VS evidence and the DOT." Soc. Sec. Reg. 00-4p

(emphasis added). Although the regulation calls for inquiry, at least one circuit court of appeals has

refused the proposition for a general rule that requires reversal of an unexplained conflict between

a VE's testimony and the DOT. *See Boone v. Barnhart*, 353 F.3d 203, 206 (3rd Cir. 2003). As the

court reiterated, "to get to that inquiry there must be an *apparent, unresolved*, conflict." *Id.*

(emphasis added). Within this Circuit, the Court of Appeals held that a mis-citation to a Dictionary

of Occupational Titles profession was not grounds for reversal of the ALJ's decision. *Fisher v.*

*Barnhart*, 181 Fed.Appx. 359, 365-67 (4th Cir. 2006). In that case, even though the Vocational

Expert ("VE") mis-cited the professions the claimant was capable of performing, the court made

clear, "[t]he Ruling [SSR 00-4p] states that it governs 'conflicts in occupational information,' not

erroneous job titles and codes." With that, an underlying trend is clear, there must be a conflict, not

a mistake, between the VE's testimony and the DOT, and the conflict must be apparent and

unresolved.

    In this case, Shamlee's argument suffers because she fails to identify the alleged

inconsistency between the VE's testimony and the DOT. On its face such a bald allegation fails to

meet the standard required by the Courts of Appeals, that there be an apparent, unresolved conflict.

At a minimum, the absence of such a proffer eliminates the "apparentness" of any conflict. Further,

Shamlee suggests that "[w]ithout the DOT numbers to specifically identify the jobs named by the

VE it is impossible to determine if in fact any conflict exists." (Pl.'s Br. Mot. Summ. J. at 24.) This

claim seems strikingly similar to the argument attempted in *Fisher*. Instead of a mis-cite to DOT

numbers, Shamlee argues that the absence of the numbers requires remand under the regulation. As

the court reasoned, however, the regulation governs conflicts. Here, there is no alleged conflict

between the DOT and the testimony.

Lastly, although Shamlee argues that the ALJ has a non-delegable duty to inquire whether a possible, latent, conflict exist, there is a suspicious dearth of legal support for this claim. In fact, in light of the court's reasoning in *Fisher* it appears to this Court that the Fourth Circuit reads SSR 00-4p rather narrowly. Accordingly, having failed to identify a conflict between the VE's testimony and the DOT, the Court recommends Shamlee's claim (vi) be DENIED.

## D.  Conclusion

In sum, recalling the standard of review set out by statute, and reiterated in *Perales, Craig,* and *Coffman,* there appears "substantial evidence" to support the Commissioner's decision to deny disability, DIB, and SSI. Similarly, there is no apparent error of law on the part of the ALJ. This is so because Shamlee has failed to show that the ALJ's decision misapplied the law in his deliberative process. Although at times the analysis was lacking, the ALJ's decision was supported by substantial evidence because he used the five-step model for determining disability, and when he scrutinized the objective medical evidence, he determined that Shamlee was capable of performing the exertional demands of sedentary work. With the assigned RFC classification, the ALJ concluded that Shamlee could perform her past relevant work as a insurance claims clerk, customer service clerk, telephone order clerk, and collections clerk. Despite Shamlee's arguments that: the ALJ summarily decided she could return to her past relevant work; the ALJ improperly applied the opinions of Dr. Wise pertaining to the weight of authority for his opinion evidence; her subjective complaints of pain were not appropriately evaluated; the Appeals Council erred in failing to grant review despite new evidence; and, there was an unexplained discrepancy in the VE's testimony and the DOT, this Court has found the decisions were firmly within the power of the ALJ

24

or Appeals Council and did not constitute an error of law. Given the deferential standard afforded to the Commissioner as provided in the authority cited above, the Court recommends affirm the ALJ's findings.

## V. RECOMMENDATION

For the foregoing reasons, the Court recommends that Shamlee's Motion for Summary Judgment be DENIED; that the Commissioner's Motion for Summary Judgment be GRANTED; that the final decision of the Commissioner be AFFIRMED; and that Judgment be entered in favor of the Commissioner.

## VI. REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(c):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this report to the objecting party, *see* 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three (3) days permitted by Rule 6(d) of said rules. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

2. A district judge shall make a *de novo* determination of those portions of this Report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v.*

*Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S. 1019 (1985); *United States v. Schronce*,

727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

<u>/s/</u>

Tommy E. Miller<br>
United States Magistrate Judge

Norfolk, Virginia

May 28, 2010

## CLERK'S MAILING CERTIFICATE

A copy of the foregoing Report and Recommendation was mailed this date to each of the following:

Claude W. Anderson, Jr., Esq.
Moody, Strople & Kloeppel, Inc.
500 Crawford St
Suite 300
Portsmouth, VA 23705

Anita K. Henry, Esq.
United States Attorney's Office
101 W. Main St
Suite 8000
Norfolk, VA 23510

Fernando Galindo, Clerk

By _____

Deputy Clerk

May 28, 2010